Julie S. Turner (*pro hac vice*)
Karen I. Boyd (*pro hac vice*)
TURNER BOYD LLP
2625 Middlefield Rd. #675
Palo Alto, California 94306
Telephone:  (650) 494-1530
Facsimile:  (650) 472-8028
turner@turnerboyd.com
boyd@turnerboyd.com

Stephen M. Dichter, 004043
Gena L. Sluga, 018633
HARPER CHRISTIAN DICHTER & SLUGA, P.C.
2700 North Central Avenue, Suite 1200
Phoenix, Arizona  85004
Telephone:  (602) 792-1700
Facsimile:  (602) 792-1710
sdichter@hcdslaw.com
gsluga@hcdslaw.com

Attorneys for Defendants and Counterclaimants
LOGITECH INTERNATIONAL S.A. and
LOGITECH, INC.

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **Hotwire Development, LLC**, an Arizona limited liability company *et al*.<br><br>              Plaintiffs,<br><br>     vs.<br><br>**Logitech International S.A.**, a Swiss corporation *et al*,<br><br>              Defendants. | Civil Case No. 2:09-cv-02383-ROS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STAY CASE PENDING RE-EXAMINATION OF THE PATENT-IN-SUIT**<br><br>**Oral Argument Requested** |

TURNER BOYD LLP<br>Attorneys at Law<br>Palo Alto, California

TURNER BOYD LLP
Attorneys at Law
Palo Alto, California

## I.    INTRODUCTION

Plaintiffs request that this action be stayed pending reexamination of the patent-in-suit by the Patent Office.  A stay will simplify the issues and trial because some or all claims will most likely be cancelled, because the litigants and the Court will have the benefit of the Patent Office's expertise, and because the prior art in the reexamination will no longer be at issue in the case.  Moreover, this case is in its earliest states, making a stay appropriate.

A stay would not prejudice Plaintiffs.  Any delay due to Defendants' exercise of its statutory right to request a reexamination cannot itself be considered legal "prejudice" for purposes of evaluating a stay.  Furthermore, a stay would not compromise Plaintiffs' ability to secure an adequate remedy should the patent survive and should Plaintiff ultimately prevail, because Plaintiffs currently license it to others, thus rendering money damages adequate to compensate them.  The cost of any delay is thus far outweighed by the efficiencies to be gained.

All of the relevant factors strongly favor the granting of a stay of this litigation pending the outcome of *inter partes* reexamination.

## II.    BACKGROUND

### A.    Procedural Status of the Dispute

This is a suit comprised exclusively of claims concerning the infringement and invalidity of Plaintiff Hotwire's U.S. Patent No. 6,527,241 (the "'241 Patent") relating to a cooling pad for laptop computers.

On May 17, 2010, Defendant Logitech, Inc. ("Logitech") filed a request for reexamination of the '241 Patent with the United States Patent and Trademark Office.[1] The request seeks cancellation of all 16 patent claims on the ground that those claims are

---

[1] Logitech filed a corrected reexamination request on June 14, 2010 to comply with formatting requirements of the Patent Office.  Because the original request and the corrected request are substantively identical, this memorandum will generally reference the original request.

anticipated and obvious in light of five prior art references that were not originally considered by the PTO.  (Declaration of Rodney C. LeRoy in Support of Defendants' Motion to Stay Case Pending Reexamination of the Patent-In-Suit ("LeRoy Decl."), ¶¶ 4-8 and Exs. A and B (request for reexamination and corrected request for reexamination)).  Each reference describes in detail the use of a pad to cool a computer or angle the computer keyboard in ways claimed in the '241 Patent.  Defendants seek to stay this lawsuit pending conclusion of the *inter partes* reexamination proceedings.

This litigation is in its earliest stages.  A complaint was filed, as were an answer with counterclaims, and a reply.  (See Docket Entries 1, 18, and 22).  A scheduling conference was held and a scheduling order issued.  (See Docket Entries 25 and 26).  The parties exchanged initial disclosures and the Court entered a protective order governing discovery.  (See Docket Entries 29-31).  There have been some preliminary settlement discussions.  Other than that, there has been no activity.  No discovery has been propounded or taken and no motions have been filed.  No depositions have been noticed or held.  No experts have been disclosed and no documents have been produced.  Although Plaintiffs filed suit over six months ago, they have never sought a preliminary injunction.  (*See* Declaration of Julie S. Turner in Support of Defendants' Motion to Stay Case Pending Reexamination of the Patent-In-Suit ("Turner Decl."), ¶ 3).  No trial date has been set by the Court, and the deadline for pretrial filings is not until November, 2011.  This litigation is thus particularly well-suited for a stay.

## B.    Reexamination Background

As envisioned by Congress, the reexamination procedure provides "an efficient and relatively inexpensive procedure for reviewing the validity of patents which would employ the PTO's expertise."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426-27 (Fed. Cir. 1988).  *Inter partes* reexamination, in particular, was designed to make reexamination a viable, less costly alternative to patent litigation.  *Cooper Techs. Co. v. Dudas*, 536 F.3d 1330, 1332 (Fed. Cir. 2008).  A stay will avoid the duplication and wasted effort that

1   would arise if the PTO and the Court were to concurrently address the validity of the '241

2   Patent and avoid the problem of conflicting results.  A stay will conserve the Court's time

3   and resources, spare the parties costly discovery and litigation, and greatly simplify—if

4   not eliminate entirely—issues for trial.

5         Reexamination is a procedure by which any person can request that the PTO re-

6   evaluate the patentability of any unexpired United States patent.  *See* 35 U.S.C. §§ 302 *et*

7   *seq.* and 311 *et seq.* (*ex parte* and *inter partes* re-exam).  In passing the *ex parte*

8   reexamination statute, which preceded the *inter partes* statute, Congress stated that

9   reexamination "will permit efficient resolution of questions about the validity of issued

10  patents without recourse to expensive and lengthy infringement litigation" and that this

11  process allows validity to be "tested in the Patent Office, where the most expert opinions

12  exist and at a much reduced cost."  *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426 (citing H.

13  Rep. 1307(I), 96th Cong., 2d Sess. 4, *reprinted in* 1980 U.S. Code Cong. & Admin. News

14  6460, 6463).  *See also Canady v. Erbe Elektromedizin GmbH*, 271 F. Supp. 2d 64, 78

15  (D.D.C. 2002) ("Congress instituted the reexamination process to shift the burden of

16  reexamination of patent validity from the courts to the PTO.  Patent validity is a

17  commonly asserted defense in litigation and courts are cognizant of Congress's intention

18  of utilizing the PTO's specialized expertise to reduce costly and timely litigation.")

19  (internal citation omitted).

20        The more recently instituted *inter partes* procedure allows third parties to have an

21  ongoing role in the reexamination proceeding, which an *ex parte* proceeding does not.  *See*

22  *Cooper Techs.*, 536 F.3d at 1332.  *Inter partes* reexamination was designed to "make

23  reexamination a viable, less-costly alternative to patent litigation" by giving third parties

24  "an expanded, although still limited, role in the reexamination process."  *Id.  Inter partes*

25  reexamination requests are more likely to be granted than *ex parte* requests and they more

26  frequently result in invalidation, cancellation and amendment of claims.  (*Compare* Turner

27  Decl., Exs. A and B.)

28

The reexamination should eliminate or, at a minimum, significantly narrow the issues in dispute.  According to the most recent data published by the PTO, it is a virtual certainty (96%) that the *inter partes* reexamination will be granted.  Of these, fully half (50%) resulted in the cancellation of all of the patent claims.  Another 42% resulted in changes to the patent claims.  Only 8% of the *inter partes* reexaminations ended with all of the patent claims confirmed (*i.e.*, remaining as they were before reexamination).  (*See* Turner Decl., Ex. A).  In other words, the odds that an *inter partes* reexamination request will result in some or all of the patent claims being changed or canceled is 92% of 96%, or ***88%***.

The likelihood that reexamination will eliminate the issues in dispute is particularly high here, for four reasons.  First, by even the greatest stretch of the imagination, only four of the 16 patent claims could be argued to encompass the accused device.  Second, these four claims are the broadest claims and thus most susceptible to cancellation.  Third, Defendants' reexamination petition identifies five pieces of highly pertinent prior art that the PTO never considered in connection with the issuance of the '241 Patent.  Fourth, the '241 Patent was granted before the standards for obviousness were broadened by the United States Supreme Court in 2007, *KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398 (2007), thereby rendering the claims more likely to be cancelled as obvious.

According to PTO statistics, it takes approximately 2.2 months (66 days) between the filing of a request for *inter partes* reexamination and the issuance of an order either granting or denying the request.  (See Turner Decl., Ex. A).  Logitech filed its corrected request on June 14, 2010.  Thus, it is reasonable to expect that the parties will know whether or not the PTO has granted that request in August 2010.

If the PTO invalidates the claims that Plaintiffs intend to assert in this action, there will be no need for a trial.  If the PTO amends or cancels the asserted claims, the Court will not have wasted resources on overbroad claims that were later transformed or rendered irrelevant, and the period for any damages will not start until any amended

1    claims are issued.  At the very least, the Defendants' cited prior art will have been vetted

2    before the technically trained examiners of the PTO, Defendants will be estopped from

3    relying on that specific art in the litigation (*see* 35 U.S.C. § 315(c)), and the Court will

4    have the benefit of the PTO's additional guidance on the scope of the claims.  As

5    Congress intended, the process will simplify the issues for litigation.

6    **III.    ARGUMENT**

7            District courts have broad discretionary power to grant stays in patent cases.  *See,*

8    *e.g., Procter & Gamble Co. v. Kraft Foods Global, Inc.*, 549 F.3d 842, 849 (Fed. Cir.

9    2008); *Ethicon, Inc.,* 849 F.2d at 1426-27 (Fed. Cir. 1988) (citation omitted).  *See also*

10   (courts have broad discretionary power to grant stays in patent cases).  This power

11   "includ[es] the authority to order a stay pending conclusion of a PTO reexamination."

12   *Ethicon, Inc.*, 849 F.2d at 1427.

13          "Congress enacted the [USPTO] reexamination procedure to provide an

14   inexpensive, expedient means of determining patent validity which, if available and

15   practical, should be deferred to by the courts."  *ASCII Corp. v. STD Entm't USA, Inc.,* 844

16   F.Supp. 1378, 1380 (N.D. Cal. 1994).  *See also Cooper Techs. Co.*, 536 F.3d at 1332

17   (explaining that *inter partes* reexamination is "a viable, less-costly **alternative** to patent

18   litigation.") (emphasis added).  Consequently, "there is a liberal policy in favor of granting

19   motions to stay proceedings pending the outcome of USPTO reexamination …

20   proceedings."  *Medicis Pharma. Corp. v. Upsher-Smith Labs, Inc.*, 486 F.Supp.2d 990,

21   (D. Ariz. 2007) (quoting *ASCII Corp. v. STD Entertainment USA, Inc.*, 844 F.Supp. 1378,

22   1381 (N.D. Cal. 1994) (citations omitted)).  *See also Lifewatch Serv., Inc., v. Medicomp,*

23   *Inc.*, No. 6:09-cv-1909-Orl-31DAB, Slip Op., 2010 WL 963202, at *1 ( M.D. Fla., Mar.

24   16, 2010) (same, granting motion to stay);   *1ˢᵗ Tech., LLC v. Digital Gaming Solutions*

25   *S.A.*, No. 4:08CV586 HEA, Slip Op., 2010 WL 883657, at *1 (E.D. Mo., Mar. 5 2010)

26   (liberal policy of granting motions to stay given Congressional mandate and PTO's

27   specialized expertise);  *Lentek Int'l, Inc. v. Sharper Image Corp.*, 169 F.Supp.2d 1360,

28

1362 (M.D. Fla. 2001).  Indeed, District Courts routinely grant motions to stay pending reexaminations.   Of all motions for stay pending reexaminations ruled on from the two years commencing June 1, 2008 until the present, the vast majority—237 versus 130—were granted.  (*See* Turner Decl., ¶¶ 7-11 and Exhibits C and D).

"In determining whether to stay a case pending reexamination, a court must consider the following factors:  (1) whether a stay will simplify the issues in question and trial of the case; (2) whether discovery is complete and whether a trial date has been set; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party."  *Medicis Pharm. Corp. v. Upsher-Smith Labs., Inc.*, 486 F.Supp.2d 990, 993-94 (D. Ariz. 2007).

A. **A Stay Will Simplify The Issues And Trial Because Some Or All Claims Will Most Likely Be Cancelled, Because The Litigants And The Court Will Have The Benefit Of The PTO's Expertise, And Because The Cited Prior Art Will No Longer Be At Issue In The Case.**

A stay will almost certainly simplify the issues in question and at trial.  There are two issues in this case:  whether or not Logitech infringes the '241 Patent and whether or not the '241 Patent is valid.  The reexamination will delegate to the PTO the task of determining the validity of the '241 Patent in light of Defendants' cited prior art.  According to the PTO's statistics, fully half of all *inter partes* reexaminations result in cancellation of ***all*** claims of the patent.  (See Turner Decl., Ex. A).  An additional 42% of *inter partes* reexaminations result in the cancellation or amendment of one or more of the claims.  (See Turner Decl., Ex. A).  Consequently, a stay pending resolution of the reexamination proceeding for the '241 Patent is likely to eliminate the need for any trial, either because all claims are cancelled or all claims that Plaintiffs intend to assert are cancelled.

Furthermore, should the patent survive reexamination, the party who requested the reexamination is estopped from relying on the same prior art at trial.  35 USC § 315(c).  Therefore, even if the '241 Patent survives the reexamination, a stay will simplify issues by eliminating a swath of highly relevant prior art references from the case.   The certainty

provided by this result is likely to foster settlement.

Finally, during the reexamination, the PTO and the patentee will most certainly exchange positions concerning the validity or invalidity of the '241 Patent. These exchanges become part of the file history and thus relevant to the construction of the claims in suit. The PTO's commentary and the patentee's response are highly likely to inform the Court's claim construction since that commentary will have been driven by Defendants' participation in the reexamination process. Consequently, issues concerning claim construction will be greatly simplified.

Staying the case pending reexamination will also likely simplify discovery for the parties. Should all claims (or those Plaintiff intends to assert) be cancelled, there will be no discovery. Discovery will be simplified by the great likelihood that asserted claims will have been amended (thereby limiting the period of time for damages discovery) or cancelled (thereby limiting the nature of what documents must be produced).

A stay pending reexamination of the '241 Patent will undoubtedly simplify the issues in this case, if not totally obviate the need for discovery, a Markman hearing, summary judgment motions, and a trial.

**B.** **This Case Is In Its Earliest Stages, Making A Stay Appropriate.**

The second consideration is "whether discovery is complete and whether a trial date has been set."

In this case, discovery has not even begun and no trial date has been set. However, the Court has set deadlines for certain pretrial activities such as the filing of a Joint Proposed Pretrial Order—for *November 2011*. See April 2, 2010, Scheduling Order, Docket No. 26. Thus, Logitech can hardly be accused of waiting until the eve of trial to seek a stay.

Furthermore, at least one court in this District has held that the setting of a trial date is of little probative value. Rather "[t]he important aspect of the second factor is simply the stage of the proceedings." *In re Phoenix Licensing LLC, Patent Litigation* , MDL

Docket No. 08-1910-MHM,  2009 WL 464993 (D. Ariz., Feb 24, 2009).  These proceedings are in their earliest stages, with a Scheduling Order in place, but practically nothing else.

This consideration weighs strongly in favor of a stay.

**C.    Plaintiffs Will Not Be Unduly Prejudiced Nor Put At A Tactical Disadvantage By A Stay.**

The most common form of prejudice for a patentee is the loss of time to exclusively exploit the time-limited monopoly afforded by a patent.  *See, e.g., In re Phoenix Licensing LLC, Patent Litigation*, 2009 WL 464993, at *4, MDL Docket No. 08-1910-MHM, 2009 WL 464993 (D. Ariz., Feb 24, 2009). ("Clearly, if there is prejudice to [the patentee], it arises primarily in the form of delay.").  Where a patentee is licensing its patent to others, however, patentee's legal remedy is monetary compensation.  Any delay from a stay pending reexamination is not prejudicial because it will not narrow or preclude any legal remedy available to the patentee.  *See id.* at *4.

Plaintiff Hotwire is licensing the '241 Patent to others (specifically to Igo, Microsoft Corporation, and Belkin International, Inc. at the moment).  The Plaintiffs can thus be compensated monetarily should they prevail.  Any delay caused by a stay shall not change this fact.  Consequently, Plaintiffs shall not suffer prejudice by the granting of a stay.

Defendants can conceive of no legitimate tactical disadvantage to Plaintiffs.  A tactical disadvantage can be suffered where a reexamination and stay are requested on the eve of trial, after protracted discovery, at a particularly critical juncture in the case, or where the timing is driven by "dilatory motive or tactics."  *See, e.g., Medicis Pharma.*, 486 F.Supp.2d at 994-95.

Here, Defendants requested a reexamination and this stay early in the litigation, before any discovery has been requested much less provided, and almost 18 months before the deadlines for various pre-trial filings.  There is no suggestion that Defendants have made these requests purely for the purpose of delay or to otherwise engage in "tactics"

designed to procedurally advantage them or disadvantage the Plaintiffs.  The only "disadvantage" to the Plaintiffs is that the '241 Patent is likely to have its claims cancelled or, at the least, amended.  This "disadvantage" would streamline or even eliminate the need for judicial intervention, and is precisely the ***advantage***—for the parties as well as the Court—envisioned by Congress when it enacted the statute providing for reexamination of patents.

## IV.    CONCLUSION

A stay pending the outcome of Defendants' *inter partes* reexamination makes sense.  This litigation is in its earliest stages and is most suited to being informed by the outcome of the reexamination.  The reexamination is highly likely to lead to amendments or outright cancellation of the patent claims.  This result will inform the litigation, should it need to proceed.  Furthermore, any damages Plaintiffs may suffer by virtue of Defendants' alleged infringement are fully compensable with money.  For these reasons, Defendants respectfully request that the Court stay this case pending the outcome of Defendants' *inter partes* reexamination.


Dated:  June 15, 2010                                    TURNER BOYD LLP


                                                         By:    /s/ Julie S. Turner /s/
                                                                Julie S. Turner


                                                         Gena L. Sluga
                                                         Stephen M. Dichter
                                                         HARPER CHRISTIAN DICHTER &
                                                         SLUGA, P.C.
                                                         2700 North Central Avenue, Suite 1200
                                                         Phoenix, Arizona 85004

                                                         Attorneys for
                                                         LOGITECH INTERNATIONAL, S.A.
                                                         and LOGITECH, INC.

Attachment

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)
**(Cite as: 2009 WL 464993 (D.Ariz.))**

**C**
Only the Westlaw citation is currently available.

United States District Court,
D. Arizona.
In re PHOENIX LICENSING LLC, PATENT LIT-
IGATION.
**MDL Docket No. 08-1910-MHM.**

Feb. 24, 2009.

**ORDER**

MARY H. MURGUIA, District Judge.

**\*1** Currently before the Court is the Citi Parties'
Motion to Stay pending reexamination of the '434
and '072 Patent. (Dkt. # s 50, 70). After reviewing
the pleadings and holding a hearing on February 5,
2009, the Court issues the following Order.[FN1]

> FN1. On February 18, 2009, pursuant to
> stipulation, the Court dismissed all claims
> by and against Direct Response Corpora-
> tion, Warner Insurance Company, and Re-
> sponse Worldwide Insurance Company
> ("Response Parties"). (Dkt. # s 126, 127).
> Due to a number of similar dismissals of
> other parties to this action, only one mem-
> ber case, E.D. Tex. Case No. 2:07-387,
> which also carries Member Case No. Ari-
> zona 08-cv-666, remains pending in the
> MDL. As such, on February 19, 2009, the
> remaining parties (Phoenix Licensing,
> LLC, LPL Licensing, LLC, Countrywide
> Home Loans, Inc., Countrywide Insurance
> Services, Inc., and Liberty Life Insurance
> Company) filed a Motion for Joint Request
> for Suggestion to Remand (Dkt.# 128),
> asking that the Court issue a Suggestion of
> Remand to the United States Judicial Panel
> on Multidistrict Litigation to remand the
> remaining member case to its transferor
> court in the Eastern District of Texas. The

Court will issue a Suggestion for Remand;
that is addressed in a separate Order.
However, the Court notes that the remain-
ing parties disagree as to whether, in light
of the Request for Suggestion to Remand,
this Court should rule on the pending Mo-
tion to Stay. Having considered the parties'
respective positions, the Court will rule on
the Motion, but also notes that the Motion
may presumably be reurged, with the per-
mission of the transferor court, if the re-
maining member case is remanded to the
Eastern District of Texas.

**I. BACKGROUND**

The Court is currently coordinating pretrial pro-
ceedings for cases transferred to it pursuant to 28
U.S.C. § 1407 by the United States Judicial Panel
on Multidistrict Litigation. (Dkt.# 1). This Mul-
tidistrict Litigation ("MDL") involves multiple pat-
ent infringement and declaratory judgment actions
with respect to three patents[FN2] owned by
Phoenix Licensing, LLC and licensed to LPL Li-
censing, LLC (collectively, "Infringement
Plaintiffs" or "Plaintiffs"). The patents-in-suit in-
volve technologies that allow companies, such as
financial and insurance institutions, to perform
marketing by automatically preparing client com-
munications relating to financial products and ser-
vices for the appropriate customers. (Dkt.# 58, p. 1,
n. 1).

> FN2. United States Patent Nos. 5,987,434
> (the "'434 Patent"), 6,076,072 (the "'072
> Patent"), and 6,999,938 (the "'938 Patent")
> (collectively, the "patents-in-suit").

On June 20, 2008, Citibank, NA, Citibank USA,
NA, Citibank (South Dakota), NA, CitiMortgage,
Inc., Citigroup, Inc., Citi Assurance Services, Inc.,
and Citicorp Credit Services, Inc. (the "Citi
Parties"), filed a Motion to Stay the MDL in light

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)
**(Cite as: 2009 WL 464993 (D.Ariz.))**

of the then-pending ex parte reexamination of the '434 Patent before the United States Patent and Trademark Office ("PTO").[FN3] (Dkt. # 50). As part of that reexamination, on May 16, 2008, the PTO rejected all 160 claims of the '434 Patent in an initial Office Action. (Dkt.# 51, p. 2). However, on January 30, 2009, six days before the Court's hearing on the Motion to Stay, and well after completion of briefing on the Motion, the PTO reversed their initial Office Action and issued a Notice of Intent to Issue Ex Parte Reexamination Certificate confirming all 160 claims of the '434 Patent without amendment. (Dkt.# 120).

> FN3. On January 16, 2009, all claims by and against the Citi Parties were dismissed from the MDL. (Dkt.# 110). In addition, in September 2008, all claims by and against the Discover Parties (Discover Financial Services, Discover Bank, DFS Services LLC, and Discover Products, Inc.), who joined in the Citi Parties' Motion to Stay (Dkt.# 52), were dismissed from the MDL. (Dkt.# 82). However, although never officially joining in the Citi Parties' Motion to Stay, the then-remaining Infringement Defendants and Declaratory Judgment Plaintiffs (the Countrywide Parties, Liberty Life Insurance Company, and the Response Parties, the latter of whom have since been dismissed from the MDL) filed a Supplemental Brief Regarding Motion to Stay and Effects of Reexamination on Asserted Claims pursuant to the Court's October 6, 2008 Minute Order directing the Citi Parties and the Infringement Plaintiffs to file supplemental briefs on the Motion to Stay. (Dkt.# 84). As such, the Court will construe the Supplemental Brief as a Joinder by the remaining Infringement Defendants (Liberty Life and the Countrywide Parties) to the Citi Parties' still-pending Motion to Stay.

But the Motion to Stay is not moot. On July 23,

2008, the Citi Parties requested that the PTO also conduct ex parte reexamination of the '072 Patent. (Dkt.# 89, Ex. D). The PTO granted that request on September 10, 2008. (*Id.*). The '938 Patent is currently not subject to reexamination.

## II. LEGAL STANDARD

Courts have the inherent power to control and manage their dockets. *Eithicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) (citing *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)). This power "includ[es] the authority to order a stay pending conclusion of a PTO reexamination." *Id.* at 1427 (citing *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1342 (Fed.Cir.1983)).

"[T]here is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination ... proceedings." *ASCII Corp. v. STD Entertainment USA, Inc.,* 844 F.Supp. 1378, 1381 (N.D.Cal.1994) (citations omitted).

"In determining whether to stay a case pending reexamination, a court must consider the following factors: (1) whether a stay will simplify the issues in question and trial of the case[,] (2) whether discovery is complete ... and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party." *Medicis Pharm. Corp. v. Upsher-Smith Laboratories, Inc.,* 486 F.Supp.2d 990, 993-94 (D.Ariz.2007).[FN4] In addition, in making this determination, "[t]he Court must weigh the competing interests presented by a specific set of facts." *Gladish v. Tyco Toys,* 1993 U.S. Dist. LEXIS 20211, at \*2-3, 1993 WL 625509 (E.D.Cal.1993).

> FN4. Although *Medicis Pharm.* includes "whether a trial date has been set" as part of the second factor, the Court believes that element is of little probative value (especially here, as it is this Court's general practice to set a trial date for civil cases

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)

**(Cite as: 2009 WL 464993 (D.Ariz.))**

only after all pre-trial litigation is complete). The important aspect of the second factor is simply the stage of the proceedings.

**\*2** Furthermore, "[a] stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue." *In re Cygnus Telecommunications Technology, LLC,* 385 F .Supp.2d 1022, 1023 (N.D.Cal.2005) (citing *Gould,* 705 F.2d at 1342 ("One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate with the expert view of the PTO (when a claim survives the reexamination proceeding).")).

## III. ANALYSIS

### A. Stage of Litigation

All of the parties acknowledge that the early stage of the MDL weighs in favor of granting a stay. (Dkt. # 89, p. 5; Dkt. # 58, p. 2 n. 3). The member cases in this MDL were not fully consolidated in this Court until April 2008, and although the remaining parties have already served their infringement and invalidity contentions pursuant to the Court's August 19, 2008 Scheduling Order, fact discovery has yet to begin. (Dkt.# 73, pp. 2-3). Notably, the Court's Scheduling Order explicitly makes all remaining discovery contingent on the Court's decision on the instant Motion to Stay. (Dkt.# 73, p. 3). Thus, as discovery is not complete and much pre-trial litigation remains, the present stage of the MDL favors grating a stay.

### B. Simplification of Issues For Trial

Prior to the PTO's recent confirmation of all 160 claims of the '434 Patent, the Infringement Defendants argued that (1) it is likely that most, if not all, of the claims asserted in the MDL are invalid as currently written, (2) the results of the PTO's reexamination proceedings will likely "render this entire effort futile," and (3) at the very least, the PTO reexamination will streamline the remaining issues for trial. (Dkt.# 50, pp. 3, 5-6, 8). Given recent events, those arguments are now somewhat dampened. Undeterred, however, Defendants continue to assert essentially the same arguments with respect to the pending reexamination of the '072 Patent. The Infringement Plaintiffs, on the other hand, argue that "staying this case pending the reexamination could not result in the Patent Office resolving most of the issues in this case" because the PTO reexamination involves only one of the three patents in suit, and given the PTO's recent confirmation of the claims of the '434 Patent without amendment, there is only a remote chance that the PTO will cancel or amend any of the asserted claims in the '072 Patent. (Dkt.# 58).

First, PTO statistics provide that there is only a 13% all-cancellation rate for patents subject to third-party requested ex parte reexamination. (Dkt.# 89, Ex. F). However, the appropriateness of a stay does not depend on whether the stay can resolve the entire case. *See In re Cygnus,* 385 F.Supp.2d at 1024 ("If the USPTO cancels *any* of the 21 claims asserted in the two patents, infringement and validity issues that could potentially be raised in any of the multiple litigations consolidated before this court would be resolved.") (emphasis added). Second, PTO statistics also provide that there is a 59% chance that some of a patent's claims will be changed. (*Id.*). But the mere fact that in any given reexamination there is a 59% chance that the patent's claims will be changed, does not necessitate staying the action; otherwise every action that involved reexamination would warrant a stay. On the other hand, "[f]or those claims that survive reexamination, this court may have a richer prosecution history upon which to base necessary claim construction determinations or reconsideration." *In re Cygnus,* 385 F.Supp.2d at 1024; *see also Medicis Pharm.,* 486 F.Supp.2d at 994 ("[A]ny review of prior art that the Court may conduct will be en-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)
**(Cite as: 2009 WL 464993 (D.Ariz.))**

hanced by the PTO's expert opinion.").

**\*3** In addition, "[b]y granting a stay at this juncture, the parties will save the expense of litigating issues that the PTO's experts may render moot." *Medicis Pharm.,* 486 F.Supp.2d at 994. Further, although Plaintiffs are correct that the Court can consider additional issues that the PTO cannot consider, such as prosecution laches and inequitable conduct, and the Court can take a more comprehensive approach than the PTO by concurrently examining the validity of all three patents in suit, it is also true that "reexamination by the PTO when issues relevant to prior art are involved is especially helpful given the PTO's expertise." *Brown v. Shimano American Corp.,* 18 U.S.P.Q.2d 1496 (C.D.Cal.1991). And although the Infringement Plaintiffs argue that permitting a stay pending reexamination would defeat the fundamental purpose of the MDL statute to "promote the just and efficient conduct of such actions," 28 U.S.C. § 1407, "[b]y permitting the USPTO to apply its expertise to the patents-in-suit, a stay of this action may facilitate more consistent outcomes in the litigations that have been transferred to it-precisely the goal of the multidistrict litigation scheme." *In re Cygnus,* 385 F.Supp.2d at 1024.

Here, however, "[m]ore compelling is plaintiff's contention that the reexamination will not resolve everything." *Enprotech Corp. v. Autotech Corp.,* 1990 U.S. Dist. LEXIS 2926, at \* 1-2, 1990 WL 37217 (N.D.Ill.1990). Although the Court disagrees with Plaintiffs' contention that courts should decline to stay actions when reexamination proceedings will not eliminate *all* of the issues in the action (Dkt.# 58, p. 6), when, as here, reexamination cannot address most of the issues involved in the litigation, the Court cannot find that "there is little question that a stay would 'simplify the issues in question and trial of the case.' " *In re Cygnus,* 385 F.Supp.2d at 1024. Only one of the three patents-in-suit, the '072 Patent, is subject to reexamination. The '938 Patent is not subject to reexamination. And more importantly, the PTO recently confirmed

all 160 claims of the '434 Patent without amendment. In addition, despite the fact that the PTO granted reexamination of the '072 Patent on the basis that there is a "substantial new question of patentability" in light of the asserted prior art, which is the basis for all grants of reexamination, the '072 reexamination involves four out of six of the same prior art that was asserted against the '434 Patent in reexamination. Therefore, because reexamination of '072 Patent will not resolve most of the issues in question or trial of the case, and in light of the PTO's recent confirmation of all of the claims of the '434 Patent (a.k.a. "the seminal patent in these actions") (Dkt.# 51, p. 1), the Court cannot find that whatever simplification of the issues that may perhaps result from the PTO's reexamination of the '072 Patent favors granting a stay at this time.

## C. Prejudice

**\*4** The Infringement Plaintiffs contend that the Court should deny the pending Motion to Stay because "[a]ny delay will necessarily prejudice LPL and Phoenix as the Plaintiffs in this litigation." (Dkt.# 58, p. 9). Specifically, Plaintiffs point to the fact that (1) "[t]he average re-examination takes 21 months," *In re Columbia University Patent Litigation,* 330 F.Supp.2d 12, 15-17 (D.Mass.2004), (2) the '072 Patent was not granted reexamination by the PTO until September 10, 2008, and (3) delay may be compounded if Defendants submit the '938 Patent for consecutive reexamination.

Clearly, if there is prejudice to Infringement Plaintiffs, it arises primarily in the form of delay. Plaintiffs assert that the PTO reexamination could potentially result in delaying resolution of MDL member cases for numerous years (based on an average reexamination period of approximately two years, not including any delay involved if the reexaminations are appealed). But Plaintiffs' worries of seemingly indefinite delay appear overstated, especially in light of the PTO's recent completion of the '434 Patent reexamination. While Plaintiffs may be correct that the average reexamination takes 21

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)
**(Cite as: 2009 WL 464993 (D.Ariz.))**

months, "reexaminations generally take from 6 months to 3 years." *In re Cygnus*, 385 F.Supp.2d at 1023. And Reexamination of the '434 Patent took only approximately thirteen months. (Dkt.# 120). Moreover, reexamination of the '072 Patent has been underway for approximately six months (reexamination was granted September 10, 2008). FN5 (Dkt.# 96, p. 2). In addition, the '072 reexamination is based on some of the same prior art asserted in the '434 reexamination, and thus it is reasonable to assume that '072 reexamination may not take as long as the '434 reexamination. (Dkt. # 89, Exs. C & D).

> FN5. The Infringement Plaintiffs state that "requesting that the '072 Patent also be reexamined demonstrates how defendants can use a series of reexaminations as inappropriate delay tactics." (Dkt.# 96, pp. 3-4). However, if Defendants truly wished to use reexaminations as inappropriate delay tactics, then they could have sought consecutive reexamination, rather than relatively concurrent reexamination, of the '072 Patent. On the other hand, Plaintiffs' allegation of inappropriateness would carry more weight in the hypothetical event that Defendants seek reexamination of the '938 Patent at this time or waited until completion of the '072 reexamination before seeking reexamination of the '938 Patent.

Plaintiffs also contend that a stay will result in their inability to realize income from licensing their patents, speculate that Defendants might enter bankruptcy as a result of the current financial crisis, and lament that potential witnesses' memories will continue to fade over time. (Dkt. # 58, pp. 9-10; Dkt.# 96, p. 5). First, it is unclear how the fading of witnesses' memories prejudices Plaintiffs in particular; presumably witnesses' memories do not rely on their affiliation with a particular party. Nonetheless, such a consideration will always weigh against granting any sort of extended stay. Second, with respect to Plaintiffs' inability to realize income, since

"LPL's only business is licensing and enforcing the patents-in-suit" and "LPL does not make, sell, or otherwise deal in any products or services," "[a] stay will not narrow or exclude any legal remedy currently available to LPL." (Dkt.# 89, p. 7); *see Sorensen v. Black and Decker Corp .,* 2007 U.S. Dist. LEXIS 66712, at * 18, 2007 WL 2696590 (S.D.Cal.2007) ("If the PTO does not invalidate or otherwise alter the claims of the patent, the Plaintiffs' legal remedy remains unaffected."). But perhaps Plaintiffs' financial concerns stem primarily from Plaintiffs' additional concern that the remaining Defendants might "go into bankruptcy during the protracted delay associated with a stay pending reexamination." (Dkt.# 96, p. 5). However, Plaintiffs submit nothing other than pure speculation to support their fears that the remaining Defendants in particular might "not remain in business or go into bankruptcy." (*Id.*).

**\*5** Nevertheless, while the delay involved in staying the MDL pending the '072 reexamination may not be exceedingly lengthy, the Court is hard pressed to find that a stay would not prejudice Plaintiffs in light of the PTO's recent confirmation of all 160 claims of the '434 reexamination without any amendment. Therefore, based on the totality of the circumstances, and for the reasons stated above, the Court cannot find that granting a stay of this MDL is warranted pending reexamination of the '072 Patent.

However, as a result of the Court's decision to issue a Suggestion of Remand to the United States Judicial Panel on Multidistrict Litigation, this MDL may soon be dissolved and the sole remaining member case remanded to the Eastern District of Texas. Therefore, the Court finds that a limited stay is appropriate pending resolution of the Court's Suggestion to Remand. As stated above, in the event that remand occurs, Defendants may presumably reurge the instant Motion to Stay before the transferor court.

**Accordingly,**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)
**(Cite as: 2009 WL 464993 (D.Ariz.))**

**IT IS HEREBY ORDERED** that the Motion to Stay (Dkt.# 50) is DENIED.

**IT IS FURTHER ORDERED** that this action is stayed pending resolution of the Court's Suggestion of Remand.

DATED this 23rd day of February, 2009.

D.Ariz.,2009.
In re Phoenix Licensing LLC, Patent Litigation
Not Reported in F.Supp.2d, 2009 WL 464993 (D.Ariz.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Westlaw.

Slip Copy, 2010 WL 883657 (E.D.Mo.)
**(Cite as: 2010 WL 883657 (E.D.Mo.))**

---

**Ħ**
Only the Westlaw citation is currently available.

United States District Court,
E.D. Missouri,
Eastern Division.
1ST TECHNOLOGY, LLC, Plaintiff,
v.
DIGITAL GAMING SOLUTIONS S.A., Digital
Gaming Network Ltd., and Townview Trading,
S.A., Defendants.
**No. 4:08CV586 HEA.**

March 5, 2010.

Anthony G. Simon, Timothy E. Grochocinski, Simon Law Firm, P.C., St. Louis, MO, for Plaintiff.

Andrew D. Dillon, Don V. Kelly, Gallop Johnson, St. Louis, MO, for Digital Gaming Solutions S.A.

---

### *MEMORANDUM AND ORDER*

HENRY EDWARD AUTREY, District Judge.

**\*1** This action is before the court on the motion of defendant, Townview Trading, S.A., to stay the case pending reexamination of the plaintiff's patent, [Doc. 72].

### *BACKGROUND*

1st Technology, LLC, brought this action for patent infringement against Digital Gaming Solutions S.A. (DGS), Digital Gaming Network Ltd., and Townview Trading, S.A. According to the Second Amended Complaint, DGS is a foreign corporation located in Costa Rica, Digital Gaming Network is a foreign corporation located in Curaçao, and Townview Trading is a foreign corporation located in Costa Rica.[FN1] (*Id.* at ¶¶ 5, 6, 8.) The Second Amended Complaint alleges that these three Defendants each infringed one or more claims of 1st

Technology's patent, Patent No. 5,564,001 (the '001 patent), and that they continue to infringe this patent.

> FN1. On May 22, 2008, the government of Curaçao received the documents that were to be served on Digital Gaming Network. (Doc. 55 at 3.) Even though the average time for effecting service in Curaçao is six months, there is still no indication Digital Gaming Network has been served. (*Id.*) Townview Trading and DGS have each answered the second amended complaint.

On June 24, 1994, 1st Technology filed an application for a patent on a "method and system for interactively transmitting multimedia information over a network which requires a reduced bandwidth." On October 8, 1996, the company obtained a patent on this method, the '001 patent. The '001 patent made thirty-two claims.

On May 15, 2008, the Patent and Trademark Office (PTO) granted a third-party request for reexamination of the '001 patent. On November 21, 2008, the PTO rejected claims 1-12, 14-16, and 22-32, but confirmed that claims 13 and 17-21 were patentable. In response to the reexamination, 1st Technology challenged the rejection of its previously approved claims, and submitted twenty-seven new claims that purported to "further define the scope and novelty of the present invention." To date, the PTO has not ruled on the validity of either the new claims or the previously rejected claims.

### *MOTION FOR A STAY*

Townview Trading moves to stay the proceedings while Plaintiff's patent is reexamined. First, Townview Trading argues that this case is still in its initial stages, with one defendant still unserved. Second, the company argues that a stay will simplify subsequent proceedings by allowing the PTO to finish examining the patent claims. Third, the com-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 883657 (E.D.Mo.)
**(Cite as: 2010 WL 883657 (E.D.Mo.))**

pany argues that a stay will conserve judicial and party resources. Fourth, the company argues that a stay would not prejudice 1st Technology.

In response, 1st Technology argues that a stay is not necessary. In particular, 1st Technology notes that reexamination proceedings take an average of two years to complete, and that it would be unfairly prejudiced by such a lengthy delay in the proceedings.

## DISCUSSION

A reexamination proceeding is an administrative proceeding by the PTO, in which it determines the validity of an existing patent. *Bausch & Lomb Inc. v. Alcon Labs., Inc.,* 914 F.Supp. 951, 952 (W.D.N.Y.1996). Congress created the reexamination process to shift the burden of reexamining the validity of a patent from the courts to the PTO. *Ho Keung Tse v. Apple, Inc.,* No. C 06-6573 SBA, 2007 WL 2904279, at *1 (N.D.Cal. Oct. 4, 2007). Given this Congressional mandate, as well as the PTO's specialized expertise in matters of patent law, there is a liberal policy of granting stays when patents are submitted to the PTO for reexamination. *Id.; Lentek Int'l, Inc. v. Sharper Image Corp.,* 169 F.Supp.2d 1360, 1362 (M.D.Fla.2001). This is particularly true where a lawsuit is in the initial stages of litigation, and where there has been little or no discovery in the case. *Ho Keung Tse,* 2007 WL 2904279, at *1. On the other hand, stays are generally disfavored where granting a stay would cause undue prejudice, would provide the non-moving party a clear tactical disadvantage, or where the case is in a late stage of litigation and approaching trial. *Lentek Int'l, Inc.,* 169 F.Supp.2d at 1362; see also *Soverain Software LLC v. Amazon.com, Inc.,* 356 F.Supp.2d 660, 661 (E.D.Tex.2005) (denying the motion for a stay, where the court had already held a *Markman* hearing, and the case was "rapidly moving toward trial").

**\*2** In light of these general rules, courts consider three factors when deciding whether to grant or deny a stay pending reexamination of a patent: (1) whether discovery is complete, and whether the case is set for trial; (2) whether a stay will simplify the issues at hand and reduce the burden of litigation for the court and the parties; and (3) whether a stay would cause undue prejudice or create a tactical disadvantage for the non-moving party. *eSoft, Inc. v. Blue Coat Sys., Inc.,* 505 F.Supp.2d 784, 787 (D.Colo.2007); *KLA-Tencor Corp. v. Nanometrics, Inc.,* No. C 05-3116, 2006 WL 708661, at *2 (N.D.Cal. Mar. 16, 2006).

Even though this case was filed over a year and a half ago, the lawsuit remains in its early stages. The parties have engaged in jurisdictional discovery, but have not participated in any discovery related to the merits of the case. Digital Gaming Network has not been served and there has been no Rule 16 Conference. As a result, the Court has not set any deadlines for discovery, the submission of claim construction briefs, or the submission of dispositive motions. More importantly, the Court has not set a trial date. The first factor supports granting the stay.

During the reexamination, the PTO rejected twenty-six of the thirty-two claims of the '001 patent. 1st Technology has challenged the rejection of these claims, and has also submitted twenty-seven new claims that purport to speak to the novelty of the invention. The question of whether the rejected claims and the new claims are patentable is currently before the PTO.

Taken together, there are fifty-three claims currently before the PTO. If the PTO finds that all of these claims are patentable, the Court will have an expert opinion clarifying the scope of dozens of claims, facilitating future proceedings. See *Ho Keung Tse,* 2007 WL 2904279, at *3. If the PTO rejects all of these claims, leaving only six claims at issue, "the scope of this litigation [would] be significantly simplified." *Id.* The elimination of so many claims might also lead the parties to settle. Finally, a stay of the current proceedings will avoid potential inconsistencies by ensuring that this court

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 883657 (E.D.Mo.)
**(Cite as: 2010 WL 883657 (E.D.Mo.))**

and the PTO do not reach opposite conclusions on identical questions. See *eSoft, Inc.,* 505 F.Supp.2d at 788. The second factor supports granting the stay.

1st Technology argues that a stay would produce a lengthy delay in the proceedings. However, this is not a case where the defendant is seeking a stay solely for the purpose of delay. "This is not a case where reexamination [was] sought on the eve of trial or after protracted discovery." *KLA-Tencor Corp.,* 2006 WL 708661, at *3. In fact, 1st Technology is now the party seeking review of its new and rejected claims before the PTO-not the defendant. And while reexamination may, in fact, cause a lengthy delay in the court proceedings, "the delay inherent to the reexamination process does not constitute, by itself, undue prejudice." *Id.;* see also 35 U.S.C. § 305 (ordering that all reexamination proceedings "be conducted with special dispatch within the Office."). Granting a stay would not unduly prejudice the plaintiffs. The third factor supports granting the stay.

**\*3** Accordingly,

**IT IS HEREBY ORDERED** that the motion of defendant, Townview Trading, S.A., to stay the case pending reexamination of Plaintiff's patent, [Doc. 72], is **GRANTED.** All proceedings before the Court are therefore stayed.

**IT IS FURTHER ORDERED** that the parties shall immediately notify the Court of the completion of the reexamination proceedings. The parties shall also provide the Court with updates, every four months, concerning the status of the reexamination.

**IT IS FURTHER ORDERED** that Plaintiff, 1st Technology, LLC, shall provide the Court with an update concerning its efforts to serve Digital Gaming Network, Ltd.

E.D.Mo.,2010.
1st Technology, LLC v. Digital Gaming Solutions S.A.

Slip Copy, 2010 WL 883657 (E.D.Mo.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 963202 (M.D.Fla.)
**(Cite as: 2010 WL 963202 (M.D.Fla.))**

**c**
Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff and not assigned editorial enhancements.**

United States District Court, M.D. Florida,
Orlando Division.
LIFEWATCH SERVICES, INC., and Card Guard
Scientific Survival, Ltd., Plaintiffs,
v.
MEDICOMP, INC., and United Therapeutics Corporation, Defendants.
**No. 6:09-cv-1909-Orl-31DAB.**

March 16, 2010.

**ORDER**

GREGORY A. PRESNELL, District Judge.

**\*1** This matter came before the Court without oral argument upon consideration of Defendants', Medicomp, Inc. and United Therapeutics Corp. ("Defendants"), Motion to Stay (the Motion") (Doc. 75), and Plaintiffs', LifeWatch Services, Inc. and Card Guard Scientific Survival, Ltd. ("Plaintiffs") response in opposition thereto (the "Response") (Doc. 80).

**I. Overview**

Plaintiffs brought this patent infringement case on November 6, 2009. (Doc. 1). There are two patents-in-suit: U.S. Patent No. 7,542,878 (the " '878 Patent") and U.S. Patent No. 5,730,143 (the " '143 Patent"). (Doc. 1, ¶¶ 9-10). On January 15, 2010, the United States Patent and Trademark Office (the "PTO") entered an order granting Defendants' request for *ex parte* reexamination of Claim 1 of the ' 878 Patent, finding that certain prior art raised a substantial question of patentability. (Doc. 55-1 at 2). On February 10, 2010, the Court entered its or-

der denying Plaintiff's Motion for Preliminary Injunction, finding that Defendants had raised a substantial question of invalidity as to Claim 1 of the ' 878 Patent. (Doc. 71 at 10). The Court further found that, in the absence of a preliminary injunction, Plaintiffs would suffer less than a one to two percent decline in market share by the middle or end of 2010 due to Defendants' entry. (Doc. 71 at 13). Finally, the Court found that Plaintiffs' damages were simply a matter of quantifying lost profits or a reasonable royalty. (Doc. 71 at 13).

On February 16, 2010, Defendants filed a request with the PTO for *inter partes* reexamination of all 30 claims in the '878 Patent. (Doc. 76-1). On February 19, 2010, Defendants filed a request with the PTO for *inter partes* reexamination of all 26 claims in the '143 Patent. (Doc. 76-2). Those requests remain pending before the PTO.

In their Motion, Defendants move the Court to stay this case until the PTO completes the last of their requested reexaminations. (Doc. 75 at 11).

In their Response, Plaintiffs contend that a stay is premature because the PTO has yet to grant either of Defendants' *inter partes* reexamination requests; that an indefinite or lengthy stay would be prejudicial because Plaintiffs would lose significant market share to Defendants; and that a stay will not simplify the issues or streamline trial. (Doc. 80 at 3, 4 and 7).

**II. Standard of Review**

District courts have broad discretionary power to grant stays in patent cases. *See, e.g., Procter & Gamble Co. v. Kraft Foods Global, Inc.,* 549 F.3d 842, 849 (Fed.Cir.2008); *Ethicon, Inc. v. Quigg,* 849 F.2d 1422, 1426-27 (Fed.Cir.1988) ("Courts have inherent power to manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination."); *Gould v. Control Laser Corp.,* 705 F.2d 1340, 1341

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 963202 (M.D.Fla.)
**(Cite as: 2010 WL 963202 (M.D.Fla.))**

(Fed.Cir.1983). When considering such a stay, courts have often considered whether a stay will simplify the issues and streamline trial, reduce the burden of litigation on the parties and the court, or unduly prejudice the non-movant. *See, e.g., Baxa Corp. v. Forhealth Techs., Inc.,* Case No. 6:06-CV-353, 2006 WL 4756455 (M.D.Fla. May 5, 2006) (citations omitted). There is a liberal policy in favor of granting stays pending reexamination. *Id.* However, a stay should ordinarily be denied unless there is a substantial issue of patentability. *Procter & Gamble Co.,* 549 F.3d at 849 (citing *Amazon.com v. Barnesandnoble.com, Inc.,* 239 F.3d 1343, 1350-51 (Fed.Cir.2001)).

## III. Analysis

**\*2** Upon careful review, Defendants' Motion will be granted in part. Notwithstanding Defendants' pending *inter partes* requests for reexamination, the PTO's order granting *ex parte* reexamination of Claim 1 of the '878 Patent merits a stay. This Court and the PTO have both found that certain prior art raises a substantial question of patentability as to Claim 1 of the '878 Patent-which, if Plaintiffs' Motion for Preliminary Injunction is any indication, comprises the gravamen of Plaintiffs' case. While the Court's finding was based on a scant record, and made in the absence of the parties' claim construction, there is a significant possibility that Claim 1 of the '878 may be cancelled or changed as a result of reexamination. *See* United States Patent and Trademark Office, Reexamination Information, *Ex parte reexamination* historical statistics, ht-tp://www.uspto .gov/patents/stats/ep_quarterly_report_ december-31_2009.pdf (noting that, as of December 31, 2009, 74% of all *ex parte* reexaminations requested by a third party resulted in a cancellation or change in claims). Accordingly, staying this case pending *ex parte* reexamination of Claim 1 of the '878 will foreclose the possibility of having to re-litigate the merits of what appears to be the most significant claim at issue in this case.

Staying this case pending *ex parte* reexamination will not prejudice Plaintiffs. The Court has already found that Plaintiffs' damages are quantifiable and that Defendants' entry into the market will have a *de minimis* effect over the next several months. Furthermore, *ex parte* reexamination is typically much shorter than *inter partes* reexamination. *See* United States Patent and Trademark Office, Reexamination Information, Reexamination operational statistics, ht-tp://www.uspto.gov/patents/stats/Reexam_Operations_ December_09.pdf.

Accordingly, it is **ORDERED** and **ADJUDGED** that:

1. Defendants' Motion (Doc. 75) is **GRANTED** in part;

2. This case is hereby **STAYED** pending *ex parte* reexamination of Claim 1 of the '878 Patent by the United States Patent and Trademark Office;

3. The parties are directed to file a status report at the close of the reexamination or by no later than **Friday, September 17, 2010,** whichever occurs first;

4. Defendants are directed to notify the Court of the status of their two requests for *inter partes* reexamination by no later than **Friday, September 17, 2010.**

5. Either party may move to lift or continue the stay upon a showing of good cause; and

6. The Clerk of the Court is directed to administratively close the file.

**DONE and ORDERED.**

M.D.Fla.,2010.
Lifewatch Services, Inc. v. Medicomp, Inc.
Slip Copy, 2010 WL 963202 (M.D.Fla.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.